

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00163-CR

———————————————————

CRISTIAN FAVELA PEREZ AKA CRISTHIAN FAVELA PEREZ, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1478948D

Before Gabriel, Kerr, and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

In two points, Appellant Cristian Favela Perez complains of his conviction for continuous sexual abuse of a child. *See* Tex. Penal Code Ann. § 21.02. Because his video-recorded confession to police was voluntary and the trial court's admission of possible juvenile extraneous sexual offenses was not reversible error, we overrule his two points and affirm the trial court's judgment.

## Background

In October 2016, Perez walked into an Arlington Police Department station and orally confessed to sexually abusing Marie,[1] a family member. Officer Vincent Vasquez testified that Perez stated that he had touched Marie's breasts, vagina, and anus over the previous eight years, beginning when Marie was three or four. Perez then executed the following written statement:

> I, Cristhian Perez, have touched [Marie] for the past 8 or five years and I feel as if I need to voluntarily give myself up as peacefully as possible to the law of Texas. I think it, being the molestation, started when she was 4 years old and I may have been 15 and this continued on and off for eight or five years and stopped two summers ago. I touched her vagina and buttox [sic] and breasts, and regret my detrim[]ental mistakes. I hope me coming in will ease her mental state because she's possibly suicidal.

After his oral confession to Officer Vasquez and his execution of the written statement, Detective Mary Tenorio interviewed Perez. A video recording of the

---

[1]In accordance with rule 9.10(a)(3) and our local rules, we refer to children and family members by aliases. Tex. R. App. P. 9.10(a)(3); 2nd Tex. App. (Fort Worth) Loc. R. 7.

interview was admitted and shown to the jury. In it, Detective Tenorio began the interview by asking Perez for his basic information—name, address—and then reading him his rights. After reading each individual right, she asked if he understood, to which he said yes. When finished, she asked him to sign a card stating each of his *Miranda* rights, and he did.

Perez then provided a detailed confession of multiple instances of his sexual abuse of Marie. Throughout, his demeanor remained calm, but 37 minutes into the interview, he told Detective Tenorio that he had given up on school because of plans to kill himself and that he was feeling "a little suicidal" right then. He started crying, and he told Detective Tenorio that he had thought about how he would kill himself and, "It[ would] be a little easier on everyone else if I was dead." At that point, Detective Tenorio text messaged her sergeant about her concerns for Perez's mental health and wellbeing. Later in the interview, he again mentioned that he had considered how to kill himself and thought about buying a gun. When Detective Tenorio asked, "Do you feel like you might kill yourself if you leave here today?" he answered, "Yes." He mentioned that he had previously been diagnosed with and taken medication for depression but had stopped taking the medication about a year prior.

After fifty minutes, Detective Tenorio stepped out to complete paperwork, leaving Perez alone in the interview room. Perez can be heard on the video recording muttering, "I wish I could kill myself right now," praying, and whispering a series of numbers over and over. At times, he appeared to be crying. Eventually, Detective

3

Tenorio returned and explained that two officers would escort Perez to John Peter Smith hospital for a mental evaluation.

Perez was subsequently charged with continuous sexual assault, three counts of aggravated sexual assault, and three counts of indecency with a child by contact. *See* Tex. Penal Code Ann. §§ 21.02(b), 21.11(a), 22.021(a).

Two months after his confession, MHMR assessed Perez's mental health and concluded that he had a mental illness—depression—but was not incompetent to stand trial and did not need a competency evaluation, though it did recommend a psychiatric evaluation. A month after that, upon the request of Perez's trial counsel, the trial court appointed Dr. Barry Norman to evaluate Perez and assist in his defense. Dr. Norman concluded that Perez was incompetent to stand trial and recommended his commitment, and the trial court adopted his opinion in February 2017. A year later, the trial court concluded that Perez remained incompetent and extended Perez's commitment.[2] It noted its findings that Perez had been diagnosed as bipolar, was likely to cause serious harm to others, and was suffering severe and abnormal mental, emotional, or physical distress; was experiencing deterioration of his ability to function independently, exhibited by his inability to provide for his needs; and was unable to make a rational and informed decision as to whether or not to submit to treatment. A few months later, Perez was found competent to stand trial.

---

[2]The State and the defense counsel agreed in February 2017 and February 2018 that Perez was incompetent to stand trial.

After a three-day trial in April 2019, Perez was found guilty of continuous sexual abuse and indecency with a child and sentenced to 75 and 20 years' confinement, respectively.

## Discussion

In his first point, Perez argues that his confessions to police were improperly admitted because his mental state rendered his statements involuntary. In his second, he argues that the trial court erred by allowing evidence of extraneous sexual offenses committed by him as a juvenile. We disagree with Perez on both points.

## I. Voluntariness of Statements

In a hearing held outside the jury's presence and before any testimony was received, Perez asked the trial court to suppress the recorded interview because it was involuntarily made due to his mental state. He did not lodge such an objection to the admission of his written confession or Officer Vasquez's testimony to Perez's oral confession, and by failing to do so, Perez forfeited any such argument on appeal. Tex. R. App. P. 33.1(a)(1); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). We therefore overrule the portions of his first point relating to those statements and will only address his voluntariness argument as it relates to the video-recorded interview.[3]

---

[3]In light of Perez's forfeiture, we need not address the State's argument that Texas Code of Criminal Procedure Article 38.22 did not apply to Perez's verbal confession to Officer Vasquez.

5

The trial court denied Perez's request to suppress the video interview and found that Perez's statements were voluntary based on its review of the recording. It reserved additional findings for after Detective Tenorio's and Officer Vasquez's testimony, at which time it stated the following on the record and outside the jury's presence:

> The defendant was not in custody at the time he gave both the recorded statement and the written statement.
>
> He was taken to an interview room. He was - - the interview room was appropriately - - appeared to be appropriately climate-controlled and of adequate size. The defendant was not interviewed while wearing cuffs. The interview lasted approximately an hour and 10 minutes. The interview was recorded.
>
> The Court did review the recording of the interview admitted as State's 1. There appeared to be no gaps or missing portions of the interview. Defendant was read his Miranda rights despite not being in custody, and they comply - - those Miranda rights complied with 38.22. The defendant indicated - - the defendant indicated he understood his rights and, understanding those rights, weighed them and continued to speak with Detective Tenorio.
>
> The defendant did not appear to be intoxicated. He appeared to have his mental faculties, and there was no coercion on the part of Detective Payne. Despite the fact that defendant stated he was depressed, it did not appear that his mental faculties were lost at the time he gave either of these statements based upon the evidence. He was not hearing voices. He did not appear to be hallucinating. Though he was depressed and appeared to have - - possibly want to harm himself, that did not affect his voluntariness and his - - any mental issues he was having did not overcome his voluntariness to give this statement.
>
> The defendant did not ask to stop the interview, nor did he invoke any right to counsel. He did not appear to be under the influence of a controlled substance.

6

Court finds there was no police overreaching or coercion in the interview of the defendant. The defendant [sic] was not over lengthy so as to overcome the will of the defendant, and any mental issues that he was having did not overcome the will of the defendant.

The defendant's statement was made under voluntary conditions. Court therefore finds the defendant did knowingly, intelligently, and voluntarily waive any rights, and that his statement, both State's Exhibit 4 and State's Exhibit 2 as well as State's Exhibit 1,[4] were voluntarily made.[5]

We review a trial court's decision to admit evidence for an abuse of discretion, particularly when, as here, its admissibility is determined based on an evaluation of the credibility and demeanor of the witnesses. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Franks v. State*, 90 S.W.3d 771, 784 (Tex. App.—Fort Worth 2002, no pet.). A trial court abuses its discretion if its ruling falls outside the zone of reasonable disagreement. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016).

A determination of the voluntary nature of a confession must be based upon an examination of the totality of the circumstances surrounding its acquisition. *Clifton v. State*, 755 S.W.2d 556, 559 (Tex. App.—Fort Worth 1988, no writ). A waiver of *Miranda* rights must be voluntary in the sense that it was the product of free and

---

[4]State's Exhibits 1 and 2 are both the same video-recorded interview. For reasons unclear in the record, only State's Exhibit 2 was admitted.

[5]The trial court granted Perez's request for the inclusion in the guilt/innocence jury charge of a voluntariness instruction regarding his statements. *See Oursbourn v. State*, 259 S.W.3d 159, 181 (Tex. Crim. App. 2008) (holding defendant's bipolar disorder and evidence that he was in a depressed or manic state at time of confession raised a voluntariness question for the jury under Article 38.22).

deliberate choice rather than intimidation, coercion, or deception; and it must be made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. *Franks*, 90 S.W.3d at 785; *see also* Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(2) (requiring oral statements be made after the accused knowingly, intelligently, and voluntarily waives his *Miranda* rights). Perez challenges only the second dimension of this inquiry: whether he was fully aware of the nature of the rights he abandoned and the consequences of that abandonment.[6] In other words, the trial court was tasked with determining whether Perez's mental illness was so severe that he was incapable of understanding the meaning and effect of his statement. *See Franks*, 90 S.W.3d at 785 (citing *Casias v. State*, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970), and *Reed v. State*, 59 S.W.3d 278, 281–82 (Tex. App.—Fort Worth 2001, pet. ref'd)).

Having reviewed the record and the recorded interview, we cannot say that the trial court abused its discretion by finding that Perez's statements were voluntarily made. Detective Tenorio read Perez his *Miranda* rights at the very beginning of the

---

[6]Because he does not accuse the officers of intimidation, coercion, or deception in arguing that his statement was involuntary, his due process claim fails as a matter of law. "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S. Ct. 515, 522 (1986); *see also Ripkowski v. State*, 61 S.W.3d 378, 384 (Tex. Crim. App. 2001) ("If appellant's cocaine use and mental disorders alone impelled him to confess, that is of no constitutional consequence."). We therefore overrule his due process arguments and will only address his arguments that the admission of the interview violated Article 38.22's voluntariness requirement.

8

hour-and-ten-minute-long interview, and she stopped after reading each individual right to confirm that Perez understood and affirmatively waived that right. He confirmed that he understood, weighed them, and expressed his desire to continue speaking with Detective Tenorio. Throughout the interview, Perez appeared cognizant and oriented. He did state that he was depressed and possibly suicidal, but it was within the trial court's discretion to determine that this alone did not undermine his ability to knowingly and voluntarily waive his rights. *See Ripkowski*, 61 S.W.3d at 383–84 (holding trial court was entitled to believe State's witnesses regarding defendant's acknowledgment of receipt of warnings, appearance of understanding, and voluntary waiver, rather than defendant's expert's testimony that voluntariness was fatally undermined by a combination of stressful conditions, bipolar disorder, and cocaine binging).

Having held the trial court did not abuse its discretion by finding Perez's interview statements were voluntarily made, we overrule his first point.

## II. Extraneous-offense evidence

Perez's second point takes issue with the trial court's allowance of testimony regarding acts of sexual abuse committed by Perez as a juvenile. He presents four sub-issues within his argument: (1) the evidence's admission violated the continuous-sexual-abuse statute's requirement that the State prove that Perez was seventeen or older at the time of the abuse; (2) the evidence was offered only for character-conformity purposes and was unfairly prejudicial; (3) the evidence confused the jury;

9

and (4) the evidence was not admissible under Texas Code of Criminal Procedure Article 38.37. But he only preserved the first and last arguments; he did not present the second and third arguments to the trial court and therefore forfeited them.[7] Tex. R. App. P. 33.1(a)(1). We therefore overrule his arguments that the extraneous-offense evidence was unfairly prejudicial or confusing or was inadmissible character conformity evidence. *See* Tex. R. Evid. 403, 404.

Perez was charged with sexually abusing Marie beginning on his seventeenth birthday in May 2009 and continuing until May 2016, with six predicate offenses alleged. Perez argued that admission of any evidence of offenses committed prior to his turning seventeen would be no more than an improper attempt to "bootstrap or backdoor" juvenile conduct on which the State cannot convict without certification of Perez as an adult. But the State agreed that it could not obtain a conviction of Perez based on any conduct committed as a juvenile, and instead asserted that juvenile-extraneous-offense evidence was admissible under Article 38.37. The trial court agreed with the State and gave the following limiting instruction to the jury once the evidence was admitted:

> Members of the jury, you are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offenses alleged against him in the indictment in

---

[7]Before trial, Perez filed a "Trial Objection Number Two (Extraneous)," in which he objected to "the admission of any extraneous offense evidence as violations of Article 38.37 . . . , as well as Texas Evidence Rules 403[ and] 404." But in our review of the record, we have not discovered any point when he presented his Rule 403 or 404 objections and obtained a ruling.

this case, whether as an adult or a juvenile, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed.  And even then you may only consider the same in determining the motive, plan, opportunity, intent, preparation, knowledge, identity, absence of mistake or accident of the defendant, if any, in connection with the offenses, if any, alleged against him in the indictment in this case or as to the relationship of the parties and for no other purpose.

You are not to consider any criminal activity alleged to have been committed while the defendant was a juvenile for purposes of criminal responsibility of the offense or offenses charged.

A juvenile is an individual under 17 years of age.

The trial court's ruling was based on Article 38.37's allowance of:

[E]vidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

(1) the state of mind of the defendant and the child; and

(2) the previous and subsequent relationship between the defendant and the child[.]

. . . .

[E]vidence that the defendant has committed a separate offense [of, among others, continuous sexual abuse of a child, indecency with a child, or sexual assault or aggravated sexual assault of a child, or an attempt or conspiracy to commit such offenses] may be admitted in the trial of an alleged [continuous-sexual-abuse offense] for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

Tex. Code Crim. Proc. Ann. art. 38.37 §§ 1(b), 2(b).  But in Perez's estimation, this exception—as it was applied by the trial court—"swallows the rule limiting conviction

11

for continuous sexual abuse to acts committed after the age of seventeen." We disagree.

Perez avers that Article 38.37 can only apply to those extraneous offenses committed by the non-juvenile defendant because an individual cannot be convicted of continuous sexual abuse unless they are over the age of seventeen; in other words, they were not a "defendant" at the time they committed the juvenile extraneous offenses. But he cites no support for his argument, and we have not found any such support in our own research. Rather, his argument asks us to read something into the plain wording of the statute that is not there—an invitation that we are legally obligated to decline. *See Lopez v. State*, 600 S.W.3d 43, 45 (Tex. Crim. App. 2020) ("Statutory construction depends on the plain meaning of the statute's language unless it is ambiguous or the plain meaning would lead to absurd results . . . . If the plain meaning is not ambiguous or does not lead to absurd results, we do not consider extra-textual factors."). If the legislature had intended Article 38.37 to apply only to those extraneous offenses committed by the defendant once they reached the age of majority, it would have said so. *Miles v. State*, 506 S.W.3d 485, 487 (Tex. Crim. App. 2016) ("[W]e assume that the legislature means what it said and derive the statute's meaning from the words that the legislature used.").

Perez's argument that this exception swallows the State's burden of proof is fatally undermined by the fact that—as the State candidly admitted—a continuous-sexual-abuse conviction may only be upheld by sufficient evidence that the accused was seventeen when he committed two or more acts of sexual abuse against the child

12

over a period of thirty days or more. *See* Tex. Penal Code Ann. 21.02. Tellingly, Perez makes no complaint regarding the sufficiency of the evidence underlying his conviction. Finally, Article 38.37 goes to the admissibility of the evidence—a concept that is separable from the weight to be assigned to the evidence by the factfinder in determining the sufficiency of the evidence to support each element of the crime. *See Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

We are not persuaded that the trial court abused its discretion by determining that the juvenile-extraneous-offense evidence was admissible under Article 38.37. We therefore overrule Perez's second point.

## Conclusion

Having overruled Perez's points, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 19, 2020